STATE OF CONNECTICUT *v.* ANTHONY SPENCER
(AC 23099)

Foti, Schaller and Dupont, Js.

---

Argued September 15, 2003—officially released February 3, 2004

*Jon L. Schoenhorn,* for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David J. Strollo,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Anthony Spencer, appeals from the judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation

of General Statutes § 53a-92 (a) (2) (A),[1] sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[2] sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[3] and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[4] The defendant claims that he was deprived of a fair trial as a result of (1) prosecutorial misconduct in closing argument and (2) the court's refusal to instruct the jury on a lesser included offense. Because we conclude that the prosecutor engaged in misconduct that violated the defendant's right to a fair trial, we reverse the judgment of the trial court and order a new trial.

The jury reasonably could have found the following facts. In June, 1994, the alleged victim, a fourteen year old girl, left school in New Haven to meet her boyfriend. The alleged victim boarded a bus from her school to downtown New Haven. Once the bus took her to downtown New Haven, she waited at another bus stop. While

---

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-70 (a) (1) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[3] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[4] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

waiting at that bus stop, she witnessed a classmate conversing with the defendant. The defendant was twenty-four years old at the time. The defendant asked the alleged victim to get into his car. When she refused, the defendant grabbed her and forced her into the car. The defendant unsuccessfully attempted to buckle her seat belt. He closed the car door and ran to the driver's side. The alleged victim attempted to open the car door, but could not figure out how to operate the door handle.

The defendant drove off with the alleged victim. He stopped at a package store to obtain beer. He left her in the car, but she remained in his sight the entire time. The defendant then drove her to a New Haven motel. Once again, he left her in the car for about five minutes as he registered for a room. The defendant returned and escorted her to the motel room. She did not attempt to escape, but unsuccessfully attempted to get the attention of other people in the parking lot. In response, the defendant grabbed her neck from behind. After they entered the motel room, the defendant locked the door. Once inside, the defendant threatened her with a partially concealed knife. The defendant then allegedly sexually assaulted her. After the alleged assault ended, she made up a story that she had a child and that she needed to pick the child up from her baby-sitter at a residence on Congress Avenue in New Haven. The defendant and the alleged victim departed from the motel in his car.

When the defendant and the alleged victim arrived at the specified location on Congress Avenue, which was actually the residence of her boyfriend, she went inside. The defendant waited outside so she supposedly could retrieve her child before the defendant would drive her home. Once inside, she broke down and informed her boyfriend that she had been assaulted. The boyfriend proceeded outside with a friend to confront the defendant, but the defendant sped off. The

alleged victim reported the alleged sexual assault to the police. Additional facts will be set forth as necessary.

## I

The defendant's first claim is that the prosecutor committed misconduct during his closing argument. Specifically, the defendant argues that the prosecutor improperly (1) expressed his personal opinions as to the defendant's guilt and the credibility of witnesses, (2) appealed to the emotions, passions and prejudices of the jurors, and (3) introduced unproven facts that were not in the record. We agree.

The defendant concedes that because he did not object to the prosecutorial misconduct at trial, his claim was not preserved properly. He may prevail on his unpreserved claim of prosecutorial misconduct if he satisfies all four requirements set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] "It is well established that [w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000). We now review the closing argument to determine whether a pattern of misconduct existed or whether the conduct was so egregious as to infringe on the defendant's right to a fair trial.

[5] The four requirements of *State* v. *Golding*, supra, 213 Conn. 239–40, are that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

"[P]rosecutorial misconduct can occur in the course of closing argument. . . . When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates." (Citations omitted; internal quotation marks omitted.) *State v. Copas*, 252 Conn. 318, 336, 746 A.2d 761 (2000). "Nevertheless, [i]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered . . . . Ultimately, therefore, the proper scope of closing argument lies within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) Id., 337.

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State v. Holmes*, 64 Conn. App. 80, 90–91, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001). "A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecutor's] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction

through the aid of passion, prejudice or resentment. If the accused be guilty, he [or she] should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury has no right to consider." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 701–702, 793 A.2d 226 (2002). We will address each of the defendant's claims of prosecutorial misconduct in turn.

A

The defendant first claims that the prosecutor improperly expressed his personal opinions as to the defendant's guilt and the credibility of witnesses. We agree.

During closing argument, the prosecutor argued that the crux of the case was whether the jury chose to believe the alleged victim as opposed to the defendant's assertion that he did not forcibly assault her. The prosecutor commented at length regarding his views of the defendant's version of the facts. Some of the prosecutor's comments included: "It just doesn't make sense," "[t]he defendant's argument is senseless," "[i]t just doesn't make sense. . . . That absolutely makes no sense," "[Y]ou've heard the defendant, his crazy story," and, "[h]e makes partial admissions, half truths, all to try to confuse the issues. Don't be confused. Don't be misled." The prosecutor also stated on three occasions during closing argument that the defendant was "trying to mislead us" in reference to the defendant's version of the facts. The prosecutor continued to argue throughout closing argument that the defendant was not telling the truth and did not understand the solemnity of an oath,

and the prosecutor repeatedly stated, "come on," after referring to testimony of the defendant.

The prosecutor offered his opinion concerning the alleged victim's credibility during the closing argument. The prosecutor stated that she had behaved in the manner in which she did because "[t]hat's only going to happen if you really did get raped." In reference to her explanation for not attempting to flee when she was left alone in the defendant's car, the prosecutor stated, "I think she explained her reactions quite well." The prosecutor stated, "She's just telling what happened," and continued by stating that he did not think she had any motive to lie, unlike the defendant.

The prosecutor gave his opinion on the ultimate issue of guilt during closing argument. The prosecutor argued that "the state feels that these are the only verdicts that the evidence supports and fairness demands in this case." He continued: "In reaching such a verdict in this case, you can walk out of this courtroom with your heads held high [because] justice will have been done." Later in closing argument, the prosecutor argued that "[t]his defendant is trying to mislead us about the kidnapping and forcibly raping the victim. Don't let him fool you. He's guilty."

"[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 861, 786 A.2d 436 (2001). "The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special

position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Citations omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 263, 780 A.2d 53 (2001).

In the present case, the prosecutor expressed his personal opinion with regard to the defendant's testimony, the alleged victim's testimony and the ultimate issue of guilt. He repeatedly expressed his opinion that the defendant's testimony was beyond belief and that the defendant had lied throughout the trial to conform his testimony to the state's evidence. The prosecutor also commented directly on the alleged victim's credibility and gave his view that she would not have acted and testified in the manner in which she did unless she actually had been assaulted. It is impermissible for a prosecutor to express his personal opinion directly or even indirectly as to the guilt of the defendant. See *State* v. *Hampton*, 66 Conn. App. 357, 371, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). The prosecutor, moreover, on two separate occasions directly gave his personal opinion that the defendant was guilty.

This case follows the reasoning of *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003), in which our Supreme Court reversed the judgment of conviction in a sexual assault case because the prosecutor had engaged in misconduct. In *Ceballos*, the court concluded that the prosecutor's improper comments pertained to the critical issue of the credibility of the alleged victim and the defendant. Id., 417. Our Supreme Court recently discussed its holding in *Ceballos*, describing the case as a "credibility contest between the state's witnesses and the defense witnesses." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 481, 832

A.2d 626 (2003). The *Thompson* court further stated that in *Ceballos*, it "concluded that there was no independent physical evidence substantiating the state's allegations that the defendant had sexually assaulted the victim, the significance of the assistant state's attorney's improper conduct increase[d] considerably." (Internal quotation marks omitted.) Id. The present case is similar to *Ceballos* because it involved a credibility contest between the defendant and the alleged victim. This case is unlike *State* v. *Thompson*, supra, 481, in which our Supreme Court determined that the prosecutorial misconduct was not so egregious as to implicate the defendant's due process right to a fair trial. In *Thompson*, the court concluded that the opposite principle was at work—"that is, contrary to the defendant's contentions, the state's case against him was strong, and the testimony of the state's witnesses was corroborated by the physical evidence, as well as the behavior of the defendant . . . ." Id. Because the factors involved in *Thompson* are not present in this case, we follow the rationale set forth in *Ceballos*.

The prosecutor's statements were compounded by his appeals to the jury to identify with the state's case. An appeal to the jury to decide a case out of a sense of duty to the state is highly inappropriate. See *State* v. *Singh*, supra, 259 Conn. 722. Such comments as "you can walk out of this courtroom with your heads held high [because] justice will have been done," and his attempts to align himself with the jury by reference to the jury and himself as one were improper.[6]

---

[6] The prosecutor attempted to align himself with the jurors by his continuous references to the jurors and to himself as one through the use of the term "us." Some examples were: "The defendant is trying to *mislead us* about the kidnapping and forcibly raping the victim. Don't let him fool you. He's guilty," and, "He just weaves his bizarre and senseless tales to conform with the state's evidence. That's what he did in this case. Again, he's trying to mislead us." (Emphasis added.)

The prosecutor's personal opinions during closing arguments were not an appropriate way to highlight the evidence presented or to suggest a reasonable conclusion that could be drawn by the jury; see *State* v. *Hampton*, supra, 66 Conn. App. 373; rather, they constituted a form of unsworn testimony that would have been difficult for the jury to ignore because of the prosecutor's special position. We conclude that the comments were improper.

### B

The defendant next claims that the prosecutor improperly appealed to the emotions, passions and prejudices of the jurors. Specifically, he argues that when the prosecutor interjected a story from his adolescence, the prosecutor attempted to inject personal sympathy and to suggest that his "irrational" reaction to that situation would explain why the alleged victim had behaved the way that she did in this case. We agree.

The defendant takes issue with the prosecutor's having recounted during closing argument a childhood experience with a bully. The prosecutor spoke at some length to explain how he had run from a bully, hid and locked himself in the family barn before finally coming out after being threatened. He told the jury how the bully beat him even though he could have remained safely in the barn until his parents came home or perhaps stayed on the school bus. He explained that when he later saw the bully while driving with his father, he was too afraid to speak out. He used the story to suggest that his "irrational" reaction to a situation at the age of fourteen would explain why the fourteen year old complainant had behaved as irrationally as she did in this case.

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide

the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . [A] prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 719.

The prosecutor's personal story was an improper attempt to inject personal sympathy into the case and to suggest that his irrational reaction to a situation at a young age could help explain why the alleged victim had acted in the manner that she did. The personal story was irrelevant and unrelated to the evidence before the jury. The story was offered to persuade the jurors on one of the most important issues in the case, the rationale behind the alleged victim's behavior before and after the alleged sexual assault. By diverting the jurors' attention to such matters, the prosecutor improperly sought to persuade them on the basis of their emotional reaction to his personal story.

## C

The defendant claims finally that the prosecutor improperly referred to facts outside the record in his closing arguments. We agree.

During closing arguments, the prosecutor argued that the alleged victim was afraid of the defendant and what he would do to her if she talked. The prosecutor stated: "He testified he didn't know where she lived. He wanted to know that so he'd have the threat over her so she wouldn't tell anybody. That's why he waited. He figured she'd get her baby. He already had her so afraid she didn't run and will take her to her house and find out where she really lives." The defendant also contends that the prosecutor used evidence that was outside

the record in his explanation of the alleged victim's behavior before and immediately following the alleged sexual assault by telling an anecdotal story from his adolescence.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. . . . [T]he state may [however] properly respond to inferences raised by the defendant's closing argument." (Citations omitted; internal quotation marks omitted.) Id., 717.

The prosecutor's comments that the defendant waited for the alleged victim to find out where she lived represented a fair inference that was based on the evidence. A prosecutor may argue the state's case forcefully as long as it is fair and based on the facts in evidence and reasonable inferences that can be drawn from them. See *State* v. *Stevenson*, 70 Conn. App. 29, 42, 797 A.2d 1, cert. granted on other grounds, 261 Conn. 918, 806 A.2d 1057 (2002). On the basis of the evidence in the record, it was a reasonable inference to draw that the defendant had waited for the alleged victim outside in his car while she went inside to pick up her baby because he was going to drive her home. It also was reasonable to infer that he wanted to drive her home so that he could intimidate her with his knowledge of where she lived. As discussed in part I B, however, it was not proper for the prosecutor to set forth his anecdotal story from his adolescence to explain why the alleged victim had acted in the manner that she did. See, e.g., *State* v. *Rogelstad,* 73 Conn. App. 17, 30 n.9, 806 A.2d 1089 (2002) (prosecutor should not have referred to his prior experience as social worker).

## D

We consider finally whether the cumulative effect of the prosecutor's misconduct so infected the proceedings as to deprive the defendant of his right to a fair trial. That final determination requires the consideration of several factors: The extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted and the strength of the state's case. See *State* v. *Whipper*, supra, 258 Conn. 262–63. We conclude that the defendant was deprived of a fair trial.

In the present case, the prosecutorial misconduct was not invited by defense conduct or argument. It is imperative that we "must review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable remarks were invited by defense conduct or argument." (Internal quotation marks omitted.) *State* v. *Briley*, 55 Conn. App. 258, 262, 739 A.2d 293, cert. denied, 251 Conn. 927, 742 A.2d 363 (1999). Nothing in the record demonstrates that the objectionable remarks were invited by the defendant's argument.

The misconduct did not consist of a single, isolated episode, but recurred throughout the prosecutor's closing argument. The misconduct was of a severe nature and central to the critical issues in the case because the case rested on the credibility of witnesses. On numerous occasions, the prosecutor expressed his personal opinion on the credibility of both the alleged victim and the defendant, and on the ultimate issue of guilt. Those improprieties were only compounded by his appeal to the jury to decide the case out of a sense of duty to the state and his attempts to align himself with the jurors.

The prosecutor's anecdotal story from his adolescence was improper. It was irrelevant, unrelated to the case and not in evidence. It was an attempt to inject personal sympathy and to suggest that his irrational reaction to a situation at a young age also could help explain why the alleged victim would act in the manner that she did during the alleged kidnapping and immediately following the alleged sexual assault.

The state argues that it has demonstrated the harmlessness of the alleged constitutional violations to satisfy the fourth prong of *Golding*. It argues that even if the prosecutor's conduct was improper, the court remedied any impropriety by giving the jury a curative instruction to disregard the comments. The court's instructions to the jury were insufficient to cure the accumulated harm created by the course of prosecutorial misconduct. See *State* v. *Stevenson*, supra, 70 Conn. App. 45. Because of the severity and the frequency of the misconduct, this is not a situation in which we can rely on the presumption that the jury will follow the court's instruction and disregard the prosecutor's statements. Furthermore, the curative instruction did not address the prosecutor's anecdotal story.

This is not a case in which the state's evidence was so strong that we can say that the misconduct constituted harmless error. The state's case rested largely on the credibility of the alleged victim and the defendant. The prosecutor's pervasive misconduct was directed at the credibility of those witnesses and the ultimate issue of guilt, and we cannot dismiss as inconsequential its cumulative effect on the jury. The other major question in the case was why the alleged victim did not flee when left alone in the defendant's car during the course of the alleged kidnapping and sexual assault. The prosecutor's irrelevant story from his childhood was used to explain that behavior.

Accordingly, we conclude that a constitutional violation clearly existed and that the cumulative effect of the prosecutor's misconduct deprived the defendant of his right to a fair trial. Because the state has failed to demonstrate the harmlessness of the constitutional violation beyond a reasonable doubt, a new trial is required.[7]

## II

We address the defendant's second claim because it is likely to arise on retrial. The defendant claims that the court improperly refused to instruct the jury on a lesser included offense. Specifically, the defendant argues that the court improperly refused to instruct the jury on unlawful restraint in the second degree as a lesser offense included within the charge of kidnapping in the first degree. We agree.

"[T]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . . *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980). Rather, the right to such an instruction is purely a matter of our common law. A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following [*Whistnant*] conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element

---

[7] In *State* v. *Stevenson*, supra, 70 Conn. App. 32–33, we concluded that when all four prongs of *Golding* are satisfied and a new trial is required, there is no need to conduct plain error review or to invoke our supervisory powers to reverse the defendant's conviction. Because we conclude that the defendant's claim satisfies all four prongs of *Golding*, we do not engage in the other requested modes of review.

or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 744–45, 799 A.2d 1056 (2002).

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Corbin*, supra, 260 Conn. 745.

The defendant argues that his written request to charge satisfied all of the prongs of *Whistnant*. The state concedes, and we agree, that the defendant satisfied the second and third prongs, but it argues that he failed to satisfy the first and fourth prongs. Our discussion will address the first and fourth prongs of *Whistnant*.

We now turn to the issue of whether, under the first prong of *Whistnant*, the defendant's request to charge constituted an appropriate request for an instruction. "A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. . . . We previously have held, in the context of a written request to charge on a lesser included offense, [that the] requirement of [Practice Book § 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form

requested."[8] (Citation omitted; internal quotation marks omitted.) *State* v. *Corbin*, supra, 260 Conn. 746.

The defendant met the requirements of Practice Book § 42-18 by filing an appropriate written request to charge as to the lesser included offense of unlawful restraint in the second degree. The request contained a complete statement of the essential facts that would have justified the court in charging in the form requested by differentiating between the unlawful restraint and the kidnapping charges, stressing the distinctions of intent and abduction. We conclude that the court was aware of the basis for the defendant's request to charge and, therefore, that the request satisfied the first prong of *Whistnant*.

Having determined that the defendant met the first prong of *Whistnant* and that the state has conceded that the second and third prongs of *Whistnant* were satisfied, we now address the fourth prong. We must determine whether the proof on the element or elements that differentiate the lesser offense from the offense charged was in dispute sufficiently to permit the jury reasonably to find the defendant innocent of the greater offense but guilty of the lesser offense. Proof is in dispute sufficiently when "it is of such a factual quality that [it] would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense." (Internal quotation marks omitted.) *State* v. *Faria*, 47 Conn. App. 159, 183–84, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

To prove unlawful restraint, the state had to prove that the defendant abducted the alleged victim by

[8] Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ."

restraining her with the intent to prevent her liberation by using or threatening to use physical force or intimidation. See General Statutes § 53a-91 (2). To obtain a conviction on unlawful restraint in the second degree in this case, the state would have been required to prove that the defendant "restrained" the alleged victim within the meaning of General Statutes § 53a-91 (1). See General Statutes § 53a-96 (a). Thus, the state would have had to prove that the defendant restricted the alleged victim's movements intentionally in such a manner as to interfere substantially with her liberty by confining her to the place where the restriction began without her consent. See General Statutes § 53a-91 (1). Those elements differ from the elements of kidnapping in the first degree. Under the kidnapping statute, the state had to prove that the defendant had abducted and restrained the alleged victim with the intent to inflict physical injury or to sexually attack her. See General Statutes § 53a-92 (a) (2) (A); *State* v. *Faria,* supra, 47 Conn. App. 184.

In the present case, the alleged victim testified that the defendant had forced her into the vehicle. She further testified that the defendant threatened her life, grabbed her neck as he escorted her to the motel room and then forcibly assaulted her. The defendant set forth a different scenario of events that would have allowed the jury to acquit him on the charge of kidnapping in the first degree while still allowing it to conclude that he was guilty of unlawful restraint in the second degree. The defendant stated in closing argument: "This is one of busiest areas in the city of New Haven, if not this entire region. . . . Something is wrong with her story of how she ended up in [the defendant's] car. She testified that she was scared of him. She didn't know if he had a weapon. She didn't want to find out. That purports to explain why she didn't try to leave at the bus stop, why she didn't try to leave at the package store, why

she didn't try to leave when he went to register at the motel, why she didn't try to leave when she said he went to buy drugs." Viewed in the light most favorable to the defendant's version of the facts included in the request to charge on the lesser included offense, the jury reasonably could have concluded that the alleged victim was not free to leave or to get out of the car due to fear, but that neither physical force nor the requisite intent was involved, as is required for a conviction of the greater offense, kidnapping in the first degree.

The defendant satisfied the fourth prong of *Whistnant* because we cannot exclude the possibility that the jury could have found him guilty of the lesser offense and not of the greater offense. We conclude that the court improperly failed to give the requested instruction.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

