## STATE OF CONNECTICUT *v.* KEITH BEAULIEU
### (AC 23297)

Schaller, Flynn and Peters, Js.

Argued February 23—officially released May 11, 2004

*John R. Williams,* for the appellant (defendant).

*Susan C. Marks,* supervisory assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *L. Mark Hurley,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the defendant challenges the validity of his conviction for kidnapping in the first degree and sexual assault in the first degree. The principal issue on appeal is whether the prosecutor deprived the defendant of a fair trial by a continued course of conduct designed to influence the jury's assessment of the credibility of the state's most important witness. We conclude that the manner in which the prosecutor conducted this case requires us to set aside the defendant's conviction for sexual assault but not his conviction for kidnapping. Accordingly, we affirm the judgment of the trial court in part and reverse it in part.

In a two count information, the state charged the defendant, Keith Beaulieu, with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2)

(A)[1] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[2] The defendant, having waived his right to counsel, proceeded to trial pro se with the assistance of standby counsel.[3] After the jury found the defendant guilty on both counts, the court sentenced him to a total effective sentence of twenty years imprisonment followed by a period of ten years special parole.

In the defendant's appeal from this adverse judgment, he raises three issues. He claims that (1) the evidence before the jury was insufficient to support his conviction of sexual assault, (2) the trial court improperly admitted hearsay evidence that implicated both his conviction of sexual assault and his conviction of kidnapping, and (3) the prosecutor violated the defendant's due process rights to a fair trial as a result of numerous instances of misconduct in the prosecutor's questioning of witnesses and in his closing argument to the jury. We are persuaded only by the claim of prosecutorial misconduct.

I

EVIDENTIARY SUFFICIENCY

The defendant claims that there was insufficient evidence to support his conviction of sexual assault in

---

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually. . . ."

[2] General Statutes § 53a-70 (a) (1) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ."

[3] The defendant does not challenge the propriety of the trial court's decision to allow him to proceed pro se. In addition, although he has alluded to several instances of alleged unfair treatment by the trial court, he has not made this a basis for his appeal.

the first degree because, in his view, the state did not establish that (1) the crime occurred within the state of Connecticut and (2) he was not married to the victim at the time of the assault.[4] We are not persuaded.

Our standard of review for challenges to the sufficiency of the evidence is well settled. We apply a two part test, interpreting the evidence, if possible, to sustain the verdict and ascertaining whether the evidence and the inferences therefrom suffice to establish the defendant's guilt beyond a reasonable doubt. E.g., *State v. Merriam*, 264 Conn. 617, 628–29, 835 A.2d 895 (2003).

The jury reasonably could have found credible the victim's account of the following events. After meeting in the summer of 1999, the defendant and the victim began a romantic relationship and came to share a residence in Milford. When the victim decided to end the relationship and to move out, the defendant responded with physical violence, threats of suicide and surveillance of the victim's car.

On December 12, 2000, the victim returned to the residence to retrieve certain personal property. The defendant's vehement refusal to permit her to do so resulted in a prolonged verbal and physical confrontation. At one point, the defendant put his hand over the victim's mouth to stop her from screaming at the defendant and appeared to be reaching for a gun.

Eventually, the victim was able to leave the residence and to return to her car but the defendant forcibly prevented her from driving away. After another serious physical confrontation, the defendant forced her to relinquish her car keys to him, and he took over the operation of the car.

---

[4] The defendant has not challenged the sufficiency of the evidence with respect to his conviction of kidnapping in the first degree.

After stopping briefly at a fast food restaurant and a gasoline station, the defendant drove southwesterly through various Connecticut towns and then to Pound Ridge, New York. He continued to threaten to kill the victim if she left him.

At some point during these travels, the defendant pulled the vehicle over near a vacant dark house that appeared to be a new construction site. Parking the car in such a way that the victim could not open the passenger door, the defendant, with the victim's reluctant assent, performed cunnilingus on her. Then, despite the victim's repeated verbal protests, he forcibly penetrated her vaginally.

Eventually, the defendant and the victim returned to the defendant's residence. The victim immediately reported the sexual assault to the police. Police photographs of her body, taken a few days later, revealed bruises on the victim's arm and buttocks. The defendant subsequently was arrested.

### A

### Location of the Sexual Assault

The defendant does not deny that the jury reasonably could have found that he had engaged in sexual intercourse with the victim and that the intercourse was not consensual. He does claim, however, that the state failed to present sufficient evidence to establish that the sexual assault occurred in this state. He alleges that the sexual assault occurred in New York, rather than in Connecticut, and that, as a consequence, the trial court lacked territorial jurisdiction to hear his case. We disagree.

Our Superior Court has no territorial jurisdiction to adjudicate a charge of sexual assault unless the state proves, beyond a reasonable doubt, that the event occurred in Connecticut. See General Statutes § 51-1a

(b); *State* v. *Ross*, 230 Conn. 183, 195, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). The genesis of this rule is the common-law principle that "one State or sovereignty cannot enforce the penal laws of another, nor punish offenses committed in and against another State or sovereignty." *State* v. *Volpe*, 113 Conn. 288, 294, 155 A. 223 (1931).

It is undisputed that the victim was never able conclusively to establish the exact location of the sexual assault. Concededly, at some point in their odyssey, she and the defendant crossed the border to New York at Pound Ridge. She testified, however, that they "started going to New York again" *after* the sexual assault had occurred. A police officer testified that, as a result of his own investigation, he had concluded that there was no evidence that the sexual assault had occurred in New York.

In rebuttal, the defendant's brief, without a citation to the record, simply states that the parties "drove through the town of Pound Ridge and then stopped in the driveway of a house under construction where they engaged in the sexual activity . . . ." In our own search of the record, we have found nothing to substantiate the defendant's assertion.[5]

As a result, we conclude that there was sufficient evidence to support the court's finding that the sexual assault occurred in Connecticut and its consequent denial of the defendant's motion for dismissal. This case was properly adjudicated within our state court system.

## B

## Marital Status of the Defendant and the Victim

The defendant also argues that there was insufficient evidence to support his conviction for sexual assault

[5] Cf. *Amnesty America* v. *West Hartford*, United States Court of Appeals, Docket No. 03-7332 (2d Cir. March 15, 2004).

in the first degree because the state did not establish that the victim and the defendant were not, at that time, married to each other. In his view, General Statutes §§ 53a-70 (a) (1) and 53a-65 (2)[6] require the state to prove lack of marriage as an element of the crime of sexual assault in the first degree. In light of *State* v. *Scott*, 11 Conn. App. 102, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1157 (1987), which the defendant does not try to distinguish, this claim is untenable.

In *Scott*, this court, in construing the same statutory sections that are at issue in this case, held that "the absence of a marital relationship between the defendant and the victim of a sexual assault is *not* an essential element of the crime. Rather, the existence of a marital relationship can be raised as *an exemption or defense* to prosecution for sexual assault in the first degree under § 53a-70 (a)." (Emphasis added.) Id., 112. Accordingly, "[a] finding of non-culpability based on the 'marital exemption' of [§] 53a-65 (2) necessarily depends upon proof of the fact that the victim and the defendant were legally married." *State* v. *Paolella*, 210 Conn. 110, 123, 554 A.2d 702 (1989).

As in *Scott*, the record in this case reveals that the defendant did not produce any evidence invoking the marital exemption, most likely because the defendant and victim were never married. Because the marital status of the parties was not relevant to the crime with which the defendant was charged, we conclude that the state did not have to disprove the existence of a

---

[6] Pursuant to General Statutes § 53a-70 (a) (1), a defendant is guilty of sexual assault in the first degree if he "compels another person to engage in sexual intercourse by the use of force . . . or by the threat of use of force . . . which reasonably causes such person to fear physical injury. . . ."

General Statutes § 53a-65 (2) defines "sexual intercourse" as including "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. *Its meaning is limited to persons not married to each other. . . .*" (Emphasis added.)

marital relationship between the defendant and the victim.

## II

## EVIDENTIARY RULINGS

The defendant next claims that the trial court improperly allowed two witnesses to offer hearsay evidence to bolster the victim's testimony of sexual assault.[7] The testimony to which he objects was provided by a friend of the victim and by a police officer. The victim had spoken to each of them about her alleged kidnapping and sexual assault. We agree with the state that their testimony was admissible.

Our standard of review for claims of evidentiary impropriety is well settled. "[T]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Outdoor Development Corp.* v. *Mihalov,* 59 Conn. App. 175, 184, 756 A.2d 293 (2000).

## A

## Friend of the Victim

A friend of the victim testified that, soon after the alleged sexual assault, the victim had told her that "[the defendant] had raped her and she was afraid that he was going to do something to [the friend] and [her daughter]." The defendant objected to this testimony on hearsay grounds. The trial court admitted it under the doctrine of constancy of accusation as articulated in *State* v. *Troupe,* 237 Conn. 284, 677 A.2d 917 (1996) (en banc). As part of its final instructions, the court

---

[7] Although the defendant asserts that the challenged evidence related to his conviction of both crimes, he has not explained how the evidence, if wrongfully admitted, affected his conviction for kidnapping.

instructed the jury that this evidence was being admitted only to assist their assessment of the victim's credibility and not for substantive purposes.

On appeal, the defendant claims that the testimony exceeded the evidentiary limitations that our Supreme Court set out in *Troupe*. In his view, the friend's testimony should have been excluded because she repeated, in detail, the victim's charges against the defendant.

"The constancy of accusation doctrine allows a witness to whom the victim of a sex crime has confided the details of the crime to testify in court about what the victim told the witness as an aid in assessing the credibility of the victim. [Id., 304–305]." *State* v. *Minor*, 80 Conn. App. 87, 93 n.8, 832 A.2d 697, cert. denied, 267 Conn. 907, 840 A.2d 1172 (2003). The permissible scope of such evidence has, however, been limited by *Troupe*, so that a witness may testify to the time and place of the attack or the identity of the alleged perpetrator but not to the details of the sexual assault. *State* v. *Troupe*, supra, 237 Conn. 304. "[S]uch evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." Id.

In this case, the trial court permitted the state to present the testimony of the friend after the victim herself had already testified about the sexual assault. The victim's testimony was extensive and she was cross-examined extensively.

The defendant asserts that the friend improperly testified about the details of the sexual assault. As a matter of fact, the record belies this assertion. As a matter of law, the friend's testimony was entirely consistent with the standard for admissibility set out in *Troupe*. See id.; see also *State* v. *Ellison*, 79 Conn. App. 591, 606–607, 830 A.2d 812 (*Troupe* permits testimony describing victim's state of mind in filing charges against defendant), cert. denied, 267 Conn. 901, 838 A.2d 211 (2003).

Under these circumstances, we conclude that the trial court did not abuse its discretion in admitting the friend's testimony into evidence. Its ruling was fully in accord with *Troupe.*

## B

## The Police Officer

The victim also spoke to a member of the Milford police force. The officer testified at length about what the victim had told him when she reported that she had been kidnapped and sexually assaulted.

The trial court overruled the defendant's objection that this testimony was inadmissible hearsay. On appeal, the defendant maintains that the officer's detailed description of the alleged crimes exceeded the bounds of permissible testimony set forth in *Troupe.*

The state does not dispute the defendant's claim that the officer's testimony was inadmissible under *Troupe.* It argues instead that the testimony was admissible as a prior consistent statement to rehabilitate the victim after extensive cross-examination by the defendant.

We start our analysis of the defendant's claim by describing what transpired at trial when the defendant objected to the officer's testimony. He objected on the ground of hearsay without referring to the doctrine of constancy of accusation. The state did not argue that the officer's testimony was admissible as constancy of accusation evidence. The trial court overruled the defendant's objection without articulating a reason for its decision. The court did not remind the prosecutor, as it had earlier, of the evidentiary restrictions imposed by *Troupe.* Constancy of accusation was simply not on the table.

The defendant does not address the disjuncture between his claim at trial and his claim on appeal. Even

a pro se defendant should inform the court, in some way, about the basis for his objection. That was not done here.

In effect, the defendant's claim of a *Troupe* violation is one that was not preserved at trial. Because claims concerning constancy of accusation testimony are evidentiary in nature, they are ineligible for constitutional review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *State* v. *Troupe*, supra, 237 Conn. 305; *State* v. *Minor*, supra, 80 Conn. App. 93; *State* v. *Spiegelmann*, 81 Conn. App. 441, 451, 840 A.2d 69 (2004).

The question then becomes whether the trial court's evidentiary ruling, reviewed for abuse of discretion, can reasonably be characterized as plain error under the circumstances of this case. We are persuaded that it cannot. As the state notes, the officer's testimony was admissible as a prior consistent statement to rehabilitate the victim after her credibility had been put into question by the defendant's searching inquiry, on cross-examination, into bias and improper motive. See Conn. Code Evid. § 6-11 (b) (2). Like constancy of accusation testimony, prior consistent statements are admissible only for credibility purposes and not for the truth of the matters asserted. *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 728, 463 A.2d 533 (1983). The trial court instructed the jury that the officer's testimony could be used only for this limited purpose.

We conclude, therefore, that the court did not abuse its discretion in admitting the officer's testimony into evidence. The court's charge to the jury properly limited the use to which this testimony might be put.

### III

### PROSECUTORIAL MISCONDUCT

The defendant's final and most important claim on appeal is that the prosecutor violated the defendant's

due process rights to a fair trial as a result of three instances of misconduct, one arising in the context of the questioning of the Milford police officer and the others involving the prosecutor's closing arguments to the jury. The defendant claims that this pattern of misconduct deprived him of his due process right to a fair trial. The state argues that, even if there was some misconduct, in context, the defendant was not seriously prejudiced thereby. We agree with the defendant with respect to his conviction of sexual assault and with the state with respect to the defendant's conviction of kidnapping.

As a preliminary matter, the defendant concedes that he did not properly preserve this claim for appeal since he failed to object to any of the instances of misconduct.[8] Nonetheless, his claim, because it is of constitutional magnitude; see *State* v. *Whipper*, 258 Conn. 229, 272, 780 A.2d 53 (2001); qualifies for review under *State* v. *Golding*, supra, 213 Conn. 239–40.

To prevail under *Golding*, the defendant must establish that the alleged constitutional violation "clearly exists and clearly deprived [him] of a fair trial . . . ." Id., 240. Even such a showing does not, however, entitle him to a new trial if the state establishes that the violation was harmless beyond a reasonable doubt. Id.

Our Supreme Court has articulated the principles that guide the analysis of the defendant's claims. "To prove prosecutorial misconduct, the defendant must demon-

---

[8] The defendant's pro se status does not excuse his failure to object. "Along with the right to represent oneself . . . is the responsibility to comply with the rules of court and the procedures established therein. . . . [T]he pro se defendant is not treated significantly different from the opposition. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 303, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

strate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 699–700, 793 A.2d 226 (2002).

Accordingly, claims of prosecutorial misconduct trigger a two-pronged inquiry. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that in the present case necessarily will require evaluation of the defendant's other misconduct claims." *State* v. *Ceballos*, 266 Conn. 364, 381–82 n.29, 832 A.2d 14 (2003).

## A

### Misconduct

To assess the validity of the defendant's claim, we first must determine whether the prosecutor engaged in misconduct. The defendant maintains that the prosecutor overstepped the boundary of zealous pursuit of the state's case because, on three occasions, he improperly bolstered the credibility of the victim. These alleged acts of misconduct occurred during the prosecutor's questioning of the Milford police officer, during initial closing argument to the jury and during rebuttal argument to the jury.

Our assessment of the validity of the defendant's claims is not an exercise in abstract reasoning. The

undeniable fact is that, in this case, the defendant's innocence or guilt depended almost entirely on the credibility of the victim.[9] The only other evidence that the state produced consisted of two photographs showing bruises to the victim's arm and buttocks. These photographs did not substantiate the victim's claim of sexual assault although they did add some objective evidence of kidnapping. The state did not have a strong case.

The prosecutor first bolstered the victim's credibility in his questioning of the officer. He repeatedly asked this witness to compare the testimony given by the victim with that given by the defendant with respect to their relative credibility and veracity.[10] We agree with the defendant that this questioning was improper. A prosecutor may not ask any witness to comment on the credibility or veracity of another witness' testimony.

[9] The defendant did not testify.

[10] The prosecutor, after eliciting Officer B's detailed description about the victim's report of her assault, asked him to evaluate the conflicting testimony of the defendant and the victim as to what had transpired on December 12, 2000. The following colloquy occurred:

"[The Prosecutor]: Did you feel [the defendant] was being evasive during the questioning to you?

"[The Witness]: [I]t appeared to me from my experience that he was unsure of what he was saying, somewhat making up as he was going along through the statement.

"[The Prosecutor]: And did you find him a credible witness giving this statement?

"[The Witness]: No, sir.

"[The Prosecutor]: Based on your training and experience as an officer, did you believe [the victim's] version or [the defendant's] version?

"[The Witness]: [The victim].

"[The Prosecutor]: And during the course of your police work, have you had the opportunity to interview victims of sexual assaults in the past?

"[The Witness]: Yes, I have, sir.

"[The Prosecutor]: And did you have any reason to doubt her version of the events?

"[The Witness]: No, I didn't."

In addition to violating *State* v. *Singh*, supra, 259 Conn. 706–708, this questioning also improperly called upon Officer B to testify as if he were an expert, when he had never been so qualified. This testimony might have led the jury to assign additional weight to all of Officer B's testimony.

*State* v. *Singh, supra,* 259 Conn. 706–708. "[Q]uestions of this sort . . . create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the witness has lied." (Internal quotation marks omitted.) *State* v. *Ceballos,* supra, 266 Conn. 380.[11]

In his initial closing argument to the jury, the prosecutor again improperly bolstered the credibility of the victim. He unequivocally vouched for her credibility by assuring the jury that she was there "to tell the truth" and made other assertions in the same vein.[12]

This argument is a textbook example of what prosecutors should not say. See *State* v. *Spencer,* 81 Conn. App. 320, 326–28, 840 A.2d 7 (2004). Our case law does not permit a prosecutor to express his opinion, directly or indirectly, about the credibility of the witnesses he has presented. "Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Put another way, the prosecutor's opinion carries with it the imprimatur of the [state] and may induce the jury to trust the [state's] judgment rather than its own view of the evidence." (Citation omitted; internal quotation marks

---

[11] In addition to his prosecutorial misconduct claim, the defendant also faults the trial court for allowing this testimony on evidentiary grounds. Because the defendant did not object to this testimony at trial, he asks for review under *Golding* or the plain error doctrine. We find that neither doctrine is implicated and therefore decline to review his claim. See *State* v. *Toccaline,* 258 Conn. 542, 549–53, 783 A.2d 450 (2001).

[12] In his initial closing argument, the prosecutor told the jury: "The case is not about sympathy. I'm not asking you to have sympathy for [the victim]. I'm asking you to consider her testimony, her demeanor, how she acted on the [witness] stand, her truthfulness. She has no ax to grind in this case. She doesn't benefit in any way [from] the outcome, guilty or not guilty. She's here to tell the truth. *The state, through myself and my witnesses, are here to just to tell the truth and place the evidence that we have.* [The defendant] has the bias in this case. He's the defendant. He has the interest in the outcome. His credibility must be viewed among those with all the witnesses." (Emphasis added.)

omitted.) *State* v. *Thompson*, 266 Conn. 440, 462, 832 A.2d 626 (2003).

The state defends the conduct of the prosecutor on the ground that, in context, the jury could not have been misled. It points to the fact that, earlier in his initial closing argument, the prosecutor had recapitulated the evidence that the jury had to consider. This recapitulation did not, however, immediately precede the statements now at issue. The prosecutor did not refer back to any of this evidence when he vouched for the credibility of the victim. In *State* v. *Thompson*, supra, 266 Conn. 440, our Supreme Court, in evaluating the propriety of similar vouching remarks, held that such remarks were permissible only when "the prosecutor was merely submitting a conclusion about truth that was tied to the evidence, namely, that [the witness] had no reason to lie, that [the witness'] story remained consistent throughout the investigation and the trial, and that the testimony . . . was corroborated by the . . . statements of [other witnesses]." Id., 468. Conversely, the court found other statements referencing the truthfulness of witnesses to be improper when they "[were] not tied to any discussion of the evidence. . . ." Id., 468–69.

Alternatively, the state argues that any possible impropriety was cured by the fact that, immediately before the challenged remarks, the prosecutor reminded the jury that "[y]ou, ladies and gentlemen are the finders of fact. My arguments, they are not evidence. . . . It doesn't matter what I think. . . ." The juxtaposition of this disclaimer with comments about the credibility of the state's witnesses does not, however, justify vouching. Our Supreme Court has held that such prefatory remarks "do not transform an otherwise improper form of argument into a proper one." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 463; see also *State* v. *Singh*, supra, 259 Conn. 699–700.

The propriety of the prosecutor's statements in his rebuttal argument presents a closer issue. After expressly urging the jury to consider the evidence, he told the jury that the victim was "*a credible witness who in her own words was violated that evening.* She said, 'no' and he didn't stop and that's what it all adds up to. Thank you for your attention." (Emphasis added.) On balance, we are persuaded that these statements were not improper. See *State* v. *Thompson*, supra, 266 Conn. 468–69.

B

Prejudice

Our analysis of the validity of the defendant's conviction cannot stop with identification of instances of prosecutorial misconduct. We must decide whether their cumulative effect so infected the trial with unfairness as to make the conviction a denial of due process. See *State* v. *Singh*, supra, 259 Conn. 723. In making this determination, we consider separately the impact of the misconduct on the defendant's conviction of kidnapping in the first degree and sexual assault in the first degree. We agree with the state that the defendant's conviction of kidnapping passes constitutional muster. We agree with the defendant that his conviction of sexual assault was fundamentally unfair.

Assessment of the harmfulness of prosecutorial misconduct requires a multifactor analysis. The relevant factors are (1) the extent to which the misconduct was invited by defense conduct or argument, (2) the severity of the misconduct, (3) the frequency of the misconduct, (4) the centrality of the misconduct to the critical issues in the case, (5) the strength of the curative measures adopted and (6) the strength of the state's case. *State* v. *Thompson*, supra, 266 Conn. 478. Because the state concedes that the defendant did not invite the miscon-

duct, we need only consider the applicability of the remaining five factors.

We start our analysis by emphasizing, once again, the centrality of the misconduct of the prosecutor. Unless the jury believed the victim, the state had no case. The state does not argue to the contrary. In such a case, "the significance of the [prosecutor's] improper conduct increases considerably." *State* v. *Ceballos*, supra, 266 Conn. 417. It matters that the state's case against the defendant was thin. *State* v. *Thompson*, supra, 266 Conn. 481–82 (strong case weakens argument of prejudicial misconduct).

We evaluate the remaining factors identified in *Thompson* against this background. We agree with the defendant that the misconduct was egregious because it occurred during both portions of the state's case and involved the ultimate issue of the victim's credibility. In context, these were not isolated events.

We recognize that, even under *Golding* review, it is significant that the defendant failed to object to this misconduct at trial. See id., 483–84; *State* v. *Reynolds*, 264 Conn. 1, 165, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). When credibility is the only issue, however, such a failure cannot be dispositive. Although the absence of a contemporaneous objection might excuse this misconduct in other circumstances, it cannot do so in the case of the credibility contest that dominated this case.

It is understandable, in light of the defendant's failure to object, why the trial court gave the jury only general instructions about its responsibility to assess the credibility of the witnesses who had appeared before it.[13]

---

[13] The court instructed the jury in relevant part: "You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are. . . .

"The evidence from which you are to decide what the facts are consists of the sworn testimony of witnesses, both on direct and cross-examination

Our Supreme Court has not established a bright line rule about the corrective power of general instructions. Compare *State* v. *Ceballos*, supra, 266 Conn. 413–15 (general instruction has only limited curative effect) with *State* v. *Thompson*, supra, 266 Conn. 485 (presumption that jury followed court's general instructions). Both cases emphasize, however, that general instructions are only one factor, and not a determinative factor, in evaluating the prejudicial effect of a prosecutor's misconduct. Because of the fact that this prosecutor's misconduct was egregious, we are persuaded that the general instructions in this case did not remove the deleterious effect of his thumb on the scale of credibility. See *State* v. *Spencer*, supra, 81 Conn. App. 334.

---

regardless of who called the witness, and the exhibits that have been received into evidence. In reaching your verdict, you should consider all the testimony and exhibits received into evidence. . . . What [the attorneys] have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. . . .

"Credibility of witnesses. In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witness' testimony. In making that decision, you must take into account a number of factors, including the following:

"1. Was the witness able to see or hear or know the things about which that witness testified?

"2. How well was the witness able to recall and describe those things?

"3. What was the witness' manner while testifying?

"4. Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

"5. How reasonable was the witness' testimony considered in light of all the evidence in the case?

"6. And, was the witness' testimony contradicted by what the witness has said or done at another time or by the testimony of other witnesses or by other evidence. . . .

"Police officials have testified here in this case. You must decide the credibility of police officials in the same way and by the same standards as you would evaluate the testimony of any ordinary witness. The testimony of a police official is entitled to no special or exclusive weight merely because it comes from a police official. . . .

"Again, it is your duty to resolve any conflicts in the testimony and find where the truth lies. In doing so, the credibility of the witnesses is entirely within your province as jurors. . . ."

Even egregious misconduct, however, does not automatically entitle a defendant to a new trial. The state emphasizes that certain physical and forensic evidence demonstrates that the credibility and veracity of the victim were not the only issues in this case. We now turn, therefore, to an examination of this additional evidence.

The evidence that the state calls to our attention consists of (1) photographs showing bruises to the victim's arm and buttocks, (2) forensic evidence revealing the presence of the defendant's semen in the victim and (3) allegedly contradictory statements made by the defendant to the police when he described the details of the sexual activity.[14]

We agree with the state that the photographic evidence corroborates the victim's testimony with respect to the kidnapping. At trial, she testified that, to prevent her from leaving the car, the defendant forcibly grabbed her arm and threatened to break it. Because the defendant, in his statement to police, asserted that he had not restrained the victim physically, photographs of bruises corroborated the victim's testimony to the contrary. In light of this photographic corroboration, the state presented the jury with evidence that was sufficient to sustain the defendant's conviction for kidnapping.

We disagree, however, with the state with respect to the sexual assault. The defendant never denied having sexual intercourse with the victim. His defense was consent. The photographs corroborate the fact that the defendant placed his body on top of the victim, but that is not the contested issue. For similar reasons, the presence of semen in the victim's body is irrelevant.

---

[14] At oral argument, the state also argued that the constancy of accusation evidence should be considered in our evaluation of the state's case. Our case law firmly holds, however, that this evidence is not to be used for substantive purposes. See *State* v. *Troupe*, supra, 237 Conn. 304.

The state did not have evidence of physical trauma that might have corroborated the state's claim of forcible sexual assault.

The state also argues that its sexual assault case against the defendant was strengthened by the fact that the defendant made two inconsistent statements on that subject to the police. The state claims that the defendant initially denied having vaginal intercourse with the victim and then, during a subsequent interview, admitted that he had done so. In both of his statements to the police, however, he consistently stated that the victim had engaged in and had consented to, both oral sex and to vaginal intercourse.[15] These assertions are entirely consistent with his position at trial. They do not, however, provide additional support for the victim's statement that she repeatedly had objected to the sexual assault.

## C

### Conclusion

To prove its charges of sexual assault and kidnapping, the state had to persuade the jury of the credibility of the

---

[15] The defendant's December 12, 2000 statement, as recorded by police, reveals the following: "[The defendant] then asked the female victim if he could perform oral sex on her and he stated she agreed, so he pulled her pants down to her ankles. After approximately 10 minutes, [the defendant] asked the female victim if he could make love to her and she stated yes. *While they were making love,* [*the defendant*] *stated the female victim changed her mind,* stating it wasn't the right time and that they shouldn't be doing that. [The defendant] stated he stopped and got back into the driver's seat while they were making love."

The next day, the defendant made the following statement, as recorded by the police. "[The defendant] stated among other things that the female victim voluntarily agreed to him performing oral sex on her *as well as sexual intercourse.* [The defendant] stated that when the female victim stated, 'I don't think this is a good idea,' he immediately stopped. [The defendant] stated, 'I came a little bit inside her.' " (Emphasis added.)

The only relevant addition to the defendant's second statement to police was that he ejaculated. We do not view this admission, however, as altering his previous statement that he and the victim engaged in sexual intercourse for a brief period of time before the victim asked him to stop.

victim. Because the prosecutor produced photographic evidence to corroborate the victim's testimony that she had been kidnapped, his misconduct was not so prejudicial to the defendant as to require a new trial on that charge. By contrast, because the prosecutor produced only equivocal evidence to corroborate the victim's testimony that she had been sexually assaulted, that conviction cannot stand.

The judgment is reversed only with respect to the defendant's conviction of sexual assault in the first degree and the case is remanded for a new trial on that charge. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.