# STATE OF CONNECTICUT *v.* KEITH BEAULIEU
## (SC 17219)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

Argued February 14—officially released July 19, 2005

*John R. Williams*, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *L. Mark Hurley*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Keith Beaulieu, appeals, following our grant of certification, from the judgment of the Appellate Court affirming in part and reversing in part the judgment of the trial court convicting the defendant of the crimes of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[1] and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[2] The Appellate Court reversed the defendant's conviction of sexual assault in the first degree on the basis of prosecutorial misconduct, but affirmed the defendant's conviction of kidnapping in the first degree. The defendant claims that, in

---

[1] General Statutes § 53a-92 (a) provides: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function."

[2] General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

view of the reversal by the Appellate Court of the conviction of sexual assault based on prosecutorial misconduct, the conviction of kidnapping cannot stand. We agree.

The defendant was charged with sexual assault in the first degree and kidnapping in the first degree. Following a jury trial, he was convicted of both charges. The Appellate Court reversed the judgment of conviction of sexual assault in the first degree, and affirmed the judgment of conviction of kidnapping in the first degree. *State* v. *Beaulieu*, 82 Conn. App. 856, 857, 848 A.2d 500 (2004). This certified appeal followed.

The Appellate Court set forth the following relevant facts and procedural history. "After meeting in the summer of 1999, the defendant and the victim began a romantic relationship and came to share a residence in Milford. When the victim decided to end the relationship and to move out, the defendant responded with physical violence, threats of suicide and surveillance of the victim's car.

"On December 12, 2000, the victim returned to the residence to retrieve certain personal property. The defendant's vehement refusal to permit her to do so resulted in a prolonged verbal and physical confrontation. At one point, the defendant put his hand over the victim's mouth to stop her from screaming at the defendant and appeared to be reaching for a gun.

"Eventually, the victim was able to leave the residence and to return to her car but the defendant forcibly prevented her from driving away. After another serious physical confrontation, the defendant forced her to relinquish her car keys to him, and he took over the operation of the car.

"After stopping briefly at a fast food restaurant and a gasoline station, the defendant drove southwesterly

through various Connecticut towns and then to Pound Ridge, New York. He continued to threaten to kill the victim if she left him.

"At some point during these travels, the defendant pulled the vehicle over near a vacant dark house that appeared to be a new construction site. Parking the car in such a way that the victim could not open the passenger door, the defendant, with the victim's reluctant assent, performed cunnilingus on her. Then, despite the victim's repeated verbal protests, he forcibly penetrated her vaginally.

"Eventually, the defendant and the victim returned to the defendant's residence. The victim immediately reported the sexual assault to the police. Police photographs of her body, taken a few days later, revealed bruises on the victim's arm and buttocks. The defendant subsequently was arrested." Id., 859–60.

Following a jury trial, the defendant was convicted of both counts and the trial court rendered judgment of conviction in accordance with the verdict. The defendant appealed from the judgment of conviction to the Appellate Court, raising the following three claims on appeal: (1) the evidence against him was insufficient to support his conviction of sexual assault; (2) the trial court improperly admitted hearsay statements of two witnesses under the constancy of accusation doctrine; and (3) the prosecutor committed misconduct during the questioning of a witness and during closing argument, depriving the defendant of a fair trial. Id., 858. The Appellate Court rejected the defendant's claims based on insufficiency of the evidence and the admission of the hearsay statements. Id., 860–66. As for the defendant's prosecutorial misconduct claim, the court concluded that the prosecutor committed misconduct by eliciting testimony from a witness commenting on the victim's credibility, and by making his own com-

ments on her credibility during closing argument. In its due process analysis, the court concluded that, with respect to the sexual assault conviction, the prosecutor's misconduct had deprived the defendant of a fair trial. Id., 876–77.

The Appellate Court also concluded, however, that with respect to the kidnapping conviction, the misconduct had not deprived the defendant of a fair trial. Id. In this respect, the court stated: "The evidence that the state calls to our attention [in corroboration of the victim's testimony regarding both the kidnapping and sexual assault charges] consists of (1) photographs showing bruises to the victim's arm and buttocks, (2) forensic evidence revealing the presence of the defendant's semen in the victim and (3) allegedly contradictory statements made by the defendant to the police when he described the details of the sexual activity.

"We agree with the state that the photographic evidence corroborates the victim's testimony with respect to the kidnapping. At trial, she testified that, to prevent her from leaving the car, the defendant forcibly grabbed her arm and threatened to break it. Because the defendant, in his statement to police, asserted that he had not restrained the victim physically, photographs of bruises corroborated the victim's testimony to the contrary. In light of this photographic corroboration, the state presented the jury with evidence that was sufficient to sustain the defendant's conviction for kidnapping.

"We disagree, however, with the state with respect to the sexual assault. The defendant never denied having sexual intercourse with the victim. His defense was consent. The photographs corroborate the fact that the defendant placed his body on top of the victim, but that is not the contested issue. For similar reasons, the presence of semen in the victim's body is irrelevant.

The state did not have evidence of physical trauma that might have corroborated the state's claim of forcible sexual assault.

"The state also argues that its sexual assault case against the defendant was strengthened by the fact that the defendant made two inconsistent statements on that subject to the police. The state claims that the defendant initially denied having vaginal intercourse with the victim and then, during a subsequent interview, admitted that he had done so. In both of his statements to the police, however, he consistently stated that the victim had engaged in and had consented to, both oral sex and to vaginal intercourse. These assertions are entirely consistent with his position at trial. They do not, however, provide additional support for the victim's statement that she repeatedly had objected to the sexual assault." Id., 875–76.

We granted the defendant's subsequent petition for certification, limited to the following issue: "Did the Appellate Court properly conclude that the state's prosecutorial misconduct did not deprive the defendant of a fair trial regarding the defendant's conviction for kidnapping?" *State* v. *Beaulieu*, 270 Conn. 908, 853 A.2d 524 (2004). We answer the certified question in the negative.

The defendant claims that because the Appellate Court concluded that the prosecutorial misconduct deprived him of a fair trial on the conviction of sexual assault, there was no valid basis for a different conclusion regarding the conviction of kidnapping. We agree that, on the facts of this case, the prosecutorial misconduct deprived the defendant of a fair trial on the kidnapping charge as well as the sexual assault charge.

We begin with the fact that the state did not seek certification to appeal from the Appellate Court's judgment regarding the sexual assault conviction. We therefore take it as a given that the state committed

prosecutorial misconduct that deprived the defendant of a fair trial on that conviction. The question presented to us, therefore, is whether there was a significant difference in the facts and circumstances of the kidnapping conviction to warrant a different result. We conclude that there was not.

In its due process analysis, the Appellate Court considered separately the impact of the prosecutorial misconduct on the defendant's conviction of sexual assault in the first degree and his conviction of kidnapping in the first degree. Regarding the sexual assault conviction, the court considered two factors to weigh strongly in favor of concluding that the defendant had been deprived of a fair trial. The court noted that the state's case against the defendant, which the court assessed as "thin," rested almost exclusively on the testimony of the victim, and, in fact, the court went so far as to say: "Unless the jury believed the victim, the state had no case." *State* v. *Beaulieu,* supra, 82 Conn. App. 873. The court considered the physical evidence offered by the state in support of the sexual assault count to constitute insufficient corroboration of the victim's testimony. Specifically, the court concluded that the photographs of bruises on the victim's arms and buttocks supported only the conclusion that the defendant had placed his body on top of the victim, but, the court reasoned, that fact was not at issue on appeal because the defendant did not deny that they had engaged in sexual intercourse; instead, his defense was consent. Id., 875. Similarly, because the fact that the defendant and the victim had engaged in intercourse was not at issue on appeal, the court concluded that the presence of semen in the victim was irrelevant to the sexual assault count. Id. Lastly, the court rejected the state's claim that the defendant had made inconsistent statements regarding whether he had engaged in vaginal intercourse with the victim, thus providing support for

the sexual assault count. Id., 876. The two statements at issue, the court noted, differed only in that the defendant acknowledged in the second statement that he had ejaculated inside the victim. Id., 876 n.15. The statements, however, were consistent insofar as the defendant admitted in both that he had engaged in vaginal intercourse with the victim. Id. The court therefore concluded that there was no physical evidence corroborating the victim's testimony in support of the sexual assault conviction. Id., 876. Thus, the prosecutor's misconduct, because it bolstered the credibility of the victim, was central to the *only* critical issue in the state's case against the defendant for sexual assault. As for the egregiousness of the misconduct and its frequency, the court analyzed those two factors together, reasoning that, "the misconduct was egregious because it occurred during both portions of the state's case and involved the ultimate issue of the victim's credibility. In context, these were not isolated events." Id., 873. Because the misconduct was so egregious, the court also concluded that the general instructions given by the trial court did not suffice to "remove the deleterious effect of [the prosecutor's] thumb on the scale of credibility." Id., 874. Finally, the court concluded that the defendant's failure to object to the prosecutor's improper questions and remarks, although significant, did not excuse the prosecutor's misconduct in light of the centrality of the misconduct to the issue of the victim's credibility.[3] Id., 873.

---

[3] We note that the defendant proceeded pro se during the three day trial and that the court appointed standby counsel. We learned at oral argument in this court, however, that the trial court appointed a different standby counsel for the defendant each day of the trial. We express our concern over the trial court's decision to allow this practice. The role of standby counsel is set out in Practice Book § 44-5, which provides: "If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal and procedural matters. If there is no objection by the defendant, such counsel may also call the judicial authority's attention to matters favorable to the defendant. Such counsel shall not interfere with the defendant's presentation of the case and may give advice only upon request."

As for the defendant's kidnapping conviction, however, the Appellate Court concluded that, because the victim had testified that the defendant had at one point "forcibly grabbed her arm" to prevent her from leaving the car, and because the defendant had stated to the police that he had not restrained the victim physically, the photograph of the bruise on the victim's arm provided sufficient corroboration to the victim's testimony such that the defendant was not deprived of a fair trial with respect to the kidnapping count. Id., 875. The Appellate Court agreed with the state that the photograph demonstrated that the victim's credibility was not the only critical issue in the state's case against the defendant for kidnapping. Id. Implicit in the court's reasoning is that the photograph of the bruise on the victim's arm affected at least two prongs of the due process analysis: the strength of the state's case; and the centrality of the misconduct to critical issues in the case. The court also grounded its analysis of the

In discussing the role of standby counsel, we have previously stated that such counsel "serves as a legal resource to pro se defendants, thereby enabling them to have meaningful access to the courts while still exercising their right to represent themselves." *State* v. *Fernandez*, 254 Conn. 637, 657, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001).The transcripts reveal that the defendant received advice from his various standby counsel during the trial. We have grave doubts that the practice followed by the trial court in the present case, appointing standby counsel "for the day," adequately serves the purpose of appointing such counsel in the first place—to ensure a defendant *meaningful* access to the courts. Standby counsel can hardly be expected to serve as an effective legal resource for a defendant if he serves in that capacity for one day only. Very often, legal issues and strategies become evident only in the course of the unfolding of a trial. For example, standby counsel on the third day of the trial may have been more likely to advise the defendant to object to the improper portions of the prosecutor's closing argument had he been present to hear the first instance in which the prosecutor improperly bolstered the victim's credibility during the examination of one of the state's witnesses on the first day of trial.

Because of the importance of informed and prepared standby counsel in protecting the defendant's right to meaningful access to the courts, we direct the trial court on remand, should the defendant again proceed pro se, to appoint one standby counsel for the duration of the trial.

egregiousness and curative measures prongs, at least in part, on its conclusion that the misconduct was central to the *only* critical issue in the state's case for sexual assault against the defendant. Therefore, it is reasonable to infer that the court perceived those prongs to be affected by the corroborative support provided by the photograph of the bruise on the victim's arm. Thus, it appears that the rationale underlying the different outcomes arrived at by the Appellate Court on the two counts is that, because the photograph of the bruise on the victim's arm provided *some* corroboration of the victim's testimony regarding the kidnapping count, and because none of the physical evidence presented by the state corroborated the victim's testimony regarding the sexual assault count, that was a sufficiently significant disparity to justify different outcomes on both counts. We do not agree that the photographs provided no support in favor of the sexual assault charge, and conclude that the disparity between the evidence supporting the kidnapping charge and that supporting the sexual assault charge was not significant enough to justify the different outcomes.

The Appellate Court's conclusion that the defendant was not deprived of a fair trial on the kidnapping count is grounded on the premise that the photographs of the victim's bruise on her arm corroborated her testimony, but that there was no corroborative evidence in support of her testimony that the defendant sexually assaulted her. This conclusion, however, is not consistent with the state's presentation of the evidence at trial. It is true that the state claimed that the arm bruise resulted from the defendant's actions in restraining the victim on the night in question. At several times during her testimony, the victim stated that the defendant grabbed her arm. The first time was when the defendant initially got into the victim's vehicle with her. She claimed that when she tried to exit from the passenger side, the

defendant "grabbed [her] arm and twisted it behind [her] . . . ." Next, when they were at the fast food restaurant, the victim made a move toward her door and the defendant again restrained her by grabbing her arm. During closing argument, however, the prosecutor relied on both bruises as evidence for the sexual assault count, stating: "Did she get home safe? Not until after she was kidnapped, driven around for several hours, held against her will and forced to submit to sexual contact. Did she lay on top of him and say, go ahead, I'm ready? No. She fought him off. He pinned her down. You can see bruising on the arms and the buttocks. Are these bruises based on everyone's rational belief? *Did these occur in normal sexual relations?*" (Emphasis added.) Given the prosecutor's closing argument, it is likely that the jury drew the suggested inference—that the bruises supported both the sexual assault and kidnapping counts.

Additionally, when the prosecutor asked the victim about the probable origin of the bruises on her buttocks, she replied that she probably received them when she was struggling with the defendant while he was sexually assaulting her. It is also clear from the prosecutor's closing argument, quoted in the preceding paragraph, that the prosecutor relied on the photograph of the bruises on her buttocks to support the sexual assault count. Therefore, it is inaccurate to say that there was no physical evidence to support the sexual assault. In fact, the physical evidence in support of both counts was essentially the same. Although the photograph of the arm bruise provided marginally greater support for the kidnapping charge than both photographs provided for the sexual assault charge, the difference was not significant enough to result in a different conclusion based on the due process analysis.

Furthermore, we have never said that, where there is merely "some" corroboration of a witness' testimony,

that is sufficient to transform a case in which the critical issue is the credibility of the witnesses to one in which the state has presented sufficient independent evidence unaffected by the prosecutorial misconduct to justify a conclusion that the defendant was not deprived of a fair trial. On the contrary, in *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), the first case in which we addressed the propriety of one witness commenting on the veracity of another witness, we concluded that the defendant was deprived of a fair trial despite the presence of some evidence that corroborated the testimony of the state's witnesses.

The defendant in *Singh* had been convicted of arson in the first degree and, on appeal, claimed that he had been deprived of a fair trial by the prosecutor's improper questions on cross-examination and comments during closing argument. Id., 694–95. One of the four categories of claimed improprieties was that the defendant claimed that the prosecutor had "improperly compelled him to characterize the testimony of other witnesses, and then improperly emphasized that testimony in closing argument." Id., 702. We concluded that the defendant had been deprived of a fair trial by the improper questioning and remarks, despite the fact that the state had produced some physical evidence in support of the defendant's guilt—a pair of shoes, tests of which revealed the presence of gasoline, and the testimony of an eyewitness who picked the defendant out of a photographic array and later identified him in court. Id., 698. We arrived at this conclusion despite our acknowledgment that "the state's evidence, while sufficient to result in a conviction, was not particularly strong." Id., 724. Similarly, in the present case, even with the evidence of the bruise on the victim's arm, the state's case on the kidnapping charge was not strong. Just as with the sexual assault charge, the state would not have prevailed on the kidnapping charge if the jury

did not believe the victim; her credibility was still the critical issue in the state's case.

The state contends that the Appellate Court erred to the benefit of the defendant in applying the due process analysis. Upon closer examination, however, it becomes clear that all of the state's arguments are directed at the Appellate Court's analysis with respect to the sexual assault charge, which is not before this court because the state did not seek certification. As we stated earlier in this opinion, we consider on certification only whether the Appellate Court properly arrived at a different conclusion regarding the kidnapping charge. Finally, the state argues that the Appellate Court erred in characterizing the prosecutor's questioning of one of its witnesses, a Milford police officer, as misconduct rather than as evidentiary error. For the reasons just stated, we decline to address this claim.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the judgment of conviction of kidnapping in the first degree, and to remand the case to the trial court for a new trial on the charges of sexual assault in the first degree and kidnapping in the first degree.

In this opinion the other justices concurred.