STATE OF CONNECTICUT *v.* ANTHONY SPENCER
(SC 17199)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 19—officially released August 30, 2005

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellant (state).

*Jon L. Schoenhorn*, for the appellee (defendant).

Opinion

VERTEFEUILLE, J. Upon our grant of certification, the state appeals from the Appellate Court's judgment reversing the conviction of the defendant, Anthony Spencer, of one count each of the crimes of kidnapping in the first degree, sexual assault in the first degree, sexual assault in the second degree, and risk of injury to a child. *State* v. *Spencer*, 81 Conn. App. 320, 840 A.2d 7 (2004). The state claims that the Appellate Court improperly reversed the defendant's conviction for sexual assault in the second degree and risk of injury to a child due to prosecutorial misconduct. We agree with the state, and, accordingly, we reverse in part the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts, which reasonably could have been found by the jury. "In June, 1994, the alleged victim, a fourteen year old girl, left school in New Haven to meet her boyfriend. The alleged victim boarded a bus from her school to downtown New Haven. Once the bus took her to downtown New Haven, she waited at another bus stop. While waiting at that bus stop, she witnessed a classmate conversing with the defendant. The defendant was twenty-four years old at the time. The defendant asked the alleged victim to get into his car. When she refused, the defendant grabbed her and forced her into the car. The defendant unsuccessfully attempted to buckle her seat belt. He closed the car door and ran to the driver's side. The alleged victim attempted to open the car door, but could not figure out how to operate the door handle.

"The defendant drove off with the alleged victim. He stopped at a package store to obtain beer. He left her

in the car, but she remained in his sight the entire time. The defendant then drove her to a New Haven motel. Once again, he left her in the car for about five minutes as he registered for a room. The defendant returned and escorted her to the motel room. She did not attempt to escape, but unsuccessfully attempted to get the attention of other people in the parking lot. In response, the defendant grabbed her neck from behind. After they entered the motel room, the defendant locked the door. Once inside, the defendant threatened her with a partially concealed knife. The defendant then allegedly sexually assaulted her. After the alleged assault ended, she made up a story that she had a child and that she needed to pick the child up from her baby-sitter at a residence on Congress Avenue in New Haven. The defendant and the alleged victim departed from the motel in his car.

"When the defendant and the alleged victim arrived at the specified location on Congress Avenue, which was actually the residence of her boyfriend, she went inside. The defendant waited outside so she supposedly could retrieve her child before the defendant would drive her home. Once inside, she broke down and informed her boyfriend that she had been assaulted. The boyfriend proceeded outside with a friend to confront the defendant, but the defendant sped off. The alleged victim reported the alleged sexual assault to the police." Id., 322–24. Additional facts will be set forth as necessary.

The defendant subsequently was arrested and charged with one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), one count of sexual assault in the second degree in violation of General

Statutes § 53a-71 (a) (1),[1] one count of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21,[2] and one count of failure to appear in the first degree in violation of General Statutes § 53a-172. A jury found the defendant guilty of kidnapping in the first degree, sexual assault in the first and second degree, and risk of injury to a child. The trial court rendered judgment in accordance with the jury's verdict.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming that he was deprived of his due process right to a fair trial as a result of prosecutorial misconduct in the state's closing argument.[3] Although the defendant did not object to the misconduct at trial; id., 324; the Appellate Court concluded that the misconduct deprived the defendant of his right to a fair trial. Id., 322. Specifically, the Appellate Court determined that during the state's closing argument, the prosecutor improperly: (1) expressed his personal opinion as to the defendant's guilt and the credibility of the witnesses; id., 328–29; (2) appealed to the jury to identify with the state's case; id., 329; (3)

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1993) § 53-21 provides in relevant part: "Any person who wilfully or unlawfully . . . does any act likely to impair the health or morals of [a child under the age of sixteen years], shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." Hereinafter, all references to § 53-21 in this opinion are to the 1993 revision, the statute that was in effect at the time the crime was committed.

[3] In his appeal to the Appellate Court, the defendant also had claimed that he was deprived of a fair trial because the court refused to instruct the jury on unlawful restraint in the second degree as a lesser included offense of kidnapping in the first degree. *State* v. *Spencer*, supra, 81 Conn. App. 335. The Appellate Court concluded that the trial court improperly failed to give the instruction on the lesser included offense as requested by the defendant and reversed the defendant's conviction on that charge. Id., 339.

appealed to the emotions of the jurors by relating a story from his youth in order to explain the behavior of the victim before and after the sexual assault; id., 330–31; and (4) referred to facts outside the record by relating this story from his youth. Id., 331–32. Accordingly, the Appellate Court reversed the judgment of the trial court and ordered a new trial on all counts of the information on which the defendant had been convicted. Id., 339. Thereafter, we granted the state's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly reverse the defendant's conviction for sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21, on the grounds of prosecutorial misconduct?" *State* v. *Spencer*, 269 Conn. 907, 852 A.2d 738 (2004). This appeal followed.

I

## PROSECUTORIAL MISCONDUCT

The state does not contest that prosecutorial misconduct occurred during the defendant's trial. The state further concedes that the misconduct deprived the defendant of his due process right to a fair trial as to his conviction for kidnapping in the first degree and sexual assault in the first degree. The state claims, however, that the Appellate Court improperly determined that the defendant was deprived of a fair trial as to his conviction for sexual assault in the second degree and risk of injury to a child.[4] Specifically, the state contends

[4] The defendant notes that prior to the state's motion for reconsideration to the Appellate Court, the state did not argue that the misconduct could deprive the defendant of a fair trial on the kidnapping in the first degree and sexual assault in the first degree charges, but not on the less serious charges of sexual assault in the second degree and the risk of injury to a child. An argument is procedurally flawed if "it was raised neither before the Appellate Court, nor before this court in the petition for certification." *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 60, 727 A.2d 213 (1999). In the present case, the state's brief in the Appellate Court obliquely referred to its contention that the misconduct could not have affected the

that the misconduct did not prejudice the defendant with regard to the conviction of those charges because there was no reasonable likelihood that the jury's verdict would have been different absent the misconduct. In response, the defendant argues that the Appellate Court properly determined that the misconduct was so egregious and pervasive that he was deprived of his due process right[5] to a fair trial on all counts, not just the most serious counts. Alternatively, the defendant contends that his right to a fair trial was violated with respect to his conviction for risk of injury to a child because the state's case was not strong and, therefore, he was prejudiced by the misconduct. We agree with the state.

We begin by setting forth the applicable standard of review. Typically, if a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] See *State* v.

jury's verdict on the less serious charges because the defendant had admitted to having sexual intercourse with the victim. Subsequent to the Appellate Court's decision, the state brought this argument to the fore in its motion for reconsideration filed with the Appellate Court and in its petition for certification. Accordingly, this argument sufficiently was raised and preserved for appeal, and thus we will consider it.

[5] The defendant claims a due process right to a fair trial under both the fourteenth amendment to the United States constitution and under the constitution of Connecticut, article first, § 8. "Although the defendant also claims a violation under the state due process clause, our decision is confined to the federal constitution because the defendant has failed to provide an independent analysis of the state constitutional issue." (Internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 367 n.4, 832 A.2d 14 (2003).

[6] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *DeJesus*, 260 Conn. 466, 472, 797 A.2d 1101 (2002).

*Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). In cases of unpreserved claims of prosecutorial misconduct, however, "it is unnecessary for the defendant to seek to prevail under the specific requirements of . . . *Golding* . . . and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . .

"Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding*, namely, whether the constitutional violation exists, and whether it was harmful. . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of misconduct tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in [due process] claims involving prosecutorial misconduct, therefore, is . . . only the fairness of the entire trial, and not the specific incidents of misconduct themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous. In light

of these observations, we conclude that, following a determination that prosecutorial misconduct has occurred, regardless of whether it was objected to, an appellate court must apply the *Williams* factors to the entire trial.

"This does not mean, however, that the absence of an objection at trial does not play a significant role in the application of the *Williams* factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . [Thus], the fact that defense counsel did not object to one or more incidents of misconduct must be considered in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Citations omitted; internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 591–93, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005).

In examining claims of prosecutorial misconduct, "we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 808, 835 A.2d 977 (2003). In the present case, the state does not contest that the misconduct occurred, thus we need consider only whether that conduct deprived the defendant of his due process right to a fair trial.

To determine whether the defendant was deprived of his due process right to a fair trial, we must determine "whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct, therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 460, 832 A.2d 626 (2003). This inquiry is guided by an examination of the following *Williams* factors: "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540.

## A

Before applying the *Williams* factors to the present case, we turn first to the state's argument that the Appellate Court improperly failed to analyze the impact of the misconduct on each crime charged. Specifically, the state argues that the Appellate Court should have analyzed the strength of the state's case on each charge, independent of the misconduct, to determine if the defendant was prejudiced by the misconduct. The defendant counters that in light of "the extreme and pervasive nature of the misconduct," the court should not "engage in judicial microsurgery to determine whether any one or more counts . . . could survive a due process challenge." We agree with the state.

In *State* v. *Beaulieu*, 274 Conn. 471, 876 A.2d 1155 (2005), a decision we released after the present case

was briefed and argued, we reviewed the impact of prosecutorial misconduct on the defendant's conviction of both sexual assault in the first degree and kidnapping in the first degree. In *Beaulieu*, the Appellate Court previously had concluded that the prosecutor committed egregious misconduct by eliciting testimony from a witness that commented on the victim's credibility and by making his own comments regarding the victim's credibility during closing argument. *State* v. *Beaulieu*, 82 Conn. App. 856, 869–70, 874, 848 A.2d 500 (2005). The Appellate Court reversed the defendant's conviction of sexual assault in the first degree, but allowed his kidnapping conviction to stand because the misconduct did not deprive the defendant of a fair trial on that charge. Id., 877. We reversed in part the judgment of the Appellate Court and directed that court to reverse the defendant's conviction on the kidnapping charge as well, but not because it improperly considered the impact of the misconduct on each conviction. Rather, we concluded that there was an insufficient disparity in the strength of the state's evidence, absent the tainted testimony, on each conviction to justify the different outcomes. *State* v. *Beaulieu*, supra, 274 Conn. 480.

In an earlier case, *State* v. *Aponte*, 249 Conn. 735, 745, 738 A.2d 117 (1999), we concluded that the state committed prosecutorial misconduct by giving a doll to the child victim prior to her testifying and that this misconduct was compounded by the trial court's restriction of the defendant's cross-examination of the victim. Nonetheless, we determined that this was harmless constitutional error with regard to three of the four charges of which the defendant had been convicted because there was strong evidence, independent of the victim's testimony, to support the defendant's conviction. Id., 755. In contrast, we concluded that this error was not harmless on the fourth count because the state's case on this count was fully dependent on the

victim's testimony. Id., 755–56. Thus, the inquiry into whether there was a fair trial requires an examination of the impact of the misconduct on each conviction. Depending on the outcome of the analysis, the conviction on some charges may be allowed to stand, while others may be reversed.

The defendant argues that *Aponte* is distinguishable from the present case because in *Aponte*, the court applied the harmless constitutional error test of a sixth amendment confrontation clause claim. We disagree. Although the analysis in *Aponte* proceeded under the harmless error test, the factors considered[7] overlap with the *Williams* factors, notably the strength of the state's case and the centrality of the misconduct to the critical issues. Compare id., 753–55, with *State* v. *Ceballos*, 266 Conn. 364, 417, 832 A.2d 14 (2003) (prosecutorial misconduct deprived defendant of fair trial because misconduct was directed at witness credibility and state's evidence absent this testimony was weak).

B

Turning to the application of the *Williams* factors in the present case, the state does not challenge the Appellate Court's determination that the misconduct was not invited by defense conduct or argument. *State* v. *Spencer*, supra, 81 Conn. App. 333. Nor does the state challenge the Appellate Court's conclusion that the misconduct recurred throughout the state's closing argument and was of a severe nature. Id. Finally, the state accepts the Appellate Court's determination that the trial court's curative instruction to disregard the prosecutor's improper comments was insufficient. Id., 334.

---

[7] The pertinent factors considered include: "the importance of the witness' testimony in the prosecution's case . . . the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points . . . and . . . the overall strength of the prosecution's case." (Internal quotation marks omitted.) *State* v. *Aponte*, supra, 249 Conn. 753.

The state contends, instead, that the Appellate Court failed to appreciate that the state's case on the charges of sexual assault in the second degree and risk of injury to a child was strong, that the misconduct was not central to the determination of the critical issues of these charges, and that defense counsel effectively conceded the defendant's guilt on these charges to the jury. Accordingly, the state argues that there is no reasonable likelihood that the jury's verdict on these charges would have been different absent the misconduct. We agree.

The following additional facts are necessary for our resolution of this claim. At trial, the defendant testified that he had had consensual sexual intercourse with the victim and that the victim had told him that she was eighteen years old. The victim testified that the defendant had had unprotected sexual intercourse with her; she stated, however, that it was nonconsensual. Finally, DNA evidence was adduced at trial showing a match between the defendant's DNA and the DNA profile of the semen sample collected from the victim's vagina.

Additionally, during closing arguments, defense counsel stated the following with regard to the counts of sexual assault in the second degree and risk of injury to a child: "Now let's move along and look at counts three and four briefly as to sexual assault in the second degree and risk of injury to a [child]. There's really not much to say here because [the defendant] got on the stand and he testified he did have sex with [the victim]. Now, based on the instructions that you will get from Judge Licari, that testimony is really dispositive of those two charges so we can move along."

In evaluating the strength of the state's case, we need not examine the state's case with regard to sexual assault in the second degree, as the defendant has con-

ceded that the state's evidence was overwhelming.[8]
Thus, we need only examine the strength of the state's
case on the charge of risk of injury to a child under
§ 53-21.

The pertinent prong of § 53-21 provides that "[a]ny
person who wilfully or unlawfully . . . does any act
likely to impair the health or morals of [a child under
the age of sixteen years], shall be fined not more than
five hundred dollars or imprisoned not more than ten
years or both." This prong has been construed to pro-
hibit "acts directly perpetrated on the person of the
minor and injurious to his [or her] moral or physical
well-being." (Internal quotation marks omitted.) *State
v. Perruccio*, 192 Conn. 154, 159, 471 A.2d 632, appeal
dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6
(1984). It is well settled that included in such prohibited
acts is "the deliberate touching of the private parts of
a child under the age of sixteen in a sexual and indecent
manner . . . ." *State v. Pickering*, 180 Conn. 54, 64,
428 A.2d 322 (1980). We previously have noted that
several Appellate Court decisions construing § 53-21
have created a "judicial gloss with respect to § 53-21
. . . to the effect that the act of having sexual inter-
course with a child under sixteen years of age was a
violation of the statute, regardless of whether there
was consent by the child." (Internal quotation marks
omitted.) *State v. Jason B.*, 248 Conn. 543, 568, 729 A.2d
760 (sexual intercourse between sixteen and one-half
year old defendant and fourteen year old victim violated
§ 53-21 even where compulsion was not proved), cert.
denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316
(1999); see also *State v. Plude*, 30 Conn. App. 527, 621
A.2d 1342 (consensual sexual intercourse between high

---

[8] The defendant conceded this in his brief and, during oral argument in
this court, defense counsel stated that: "I will concede up front that at least
with regard to the statutory rape, sexual assault [in the] second degree,
there is overwhelming evidence of that one charge."

school teacher and thirteen year old student violated § 53-21), cert. denied, 225 Conn. 923, 625 A.2d 824 (1993).

In the present case, the twenty-four year old defendant admitted having sexual intercourse with the fourteen year old victim, and this testimony was corroborated by both the victim and DNA evidence. Thus, there was overwhelming evidence that the defendant had sexual intercourse with a child under sixteen years of age. Further, the fact that the defendant was twenty-four years old and the victim was only fourteen years old, at the time of the sexual intercourse, strengthens the state's case that the act was unlawful, and thus in violation of § 53-21.

The defendant counters that the evidence that he violated § 53-21 was not overwhelming. Particularly, the defendant argues that No. 93-340, § 2, of the 1993 Public Acts alters our prior interpretation of § 53-21. That Public Act amended the revision of § 53a-71 (a) (1) then in effect by decriminalizing sexual intercourse between minors thirteen years of age or older with partners who are no more than two years older. Accordingly, the defendant contends this amendment placed doubt on whether sexual intercourse with a fourteen year old "was injurious to her moral or physical well-being" because a fourteen year old can now engage in sexual intercourse with a partner no more than two years older without the partner incurring criminal liability. We are not persuaded.

We previously have observed that Public Act 93-340 did not amend § 53-21. See *State* v. *Jason B.*, supra, 248 Conn. 569. "[T]he legislative history suggests that the safe harbor exemption [to § 53a-71 (a) (1)] was added solely to ameliorate the harsh results of the criminal law as it was being applied to consenting, sexually active adolescents who were close in age. . . . [N]o legislator

contended that a person qualifying for the exemption would be less likely to impair the morals of a child." (Internal quotation marks omitted.) Id. Thus, in the present case, the amendment in no way lessens the likelihood that the sexual intercourse impaired the victim's morals.

Next, the state claims that the Appellate Court improperly concluded that the misconduct was central to the critical issues in the case because the case rested on the credibility of the witnesses. The state contends that the issue of credibility of the witnesses was germane only to the counts of kidnapping in the first degree and sexual assault in the first degree. We agree.

Misconduct that implicates the credibility of the witnesses is central to the critical issues of a case where the case is a "credibility contest" between the state's witnesses and the defendant's witnesses because the state's evidence is otherwise weak. See *State* v. *Beaulieu*, supra, 274 Conn. 480 (misconduct related to victim's credibility was central to critical issue because state's only evidence of kidnapping was photograph of bruises on victim); *State* v. *Ceballos*, supra, 266 Conn. 415–17 (misconduct related to witness credibility was central to critical issues in child sexual abuse case because state's physical evidence was not conclusive). In contrast, when the state provides strong evidence of the defendant's guilt independent of the tainted testimony, such misconduct is not central to the critical issues. See *State* v. *Thompson*, supra, 266 Conn. 480–83 (misconduct relating to witness credibility was not central to critical issues in case because strong circumstantial evidence corroborated testimony of state's witnesses).

In the present case, like *Beaulieu* and *Ceballos*, the misconduct was predominantly related to witness credibility. See *State* v. *Spencer*, supra, 81 Conn. App. 326–32.

Although the Appellate Court determined that the prosecutor improperly expressed his opinion as to the defendant's guilt[9] and improperly appealed to the jury to identify with the state's case,[10] these instances of misconduct were isolated compared to the prosecutor's frequent comments on witness credibility.[11]

Unlike *Beaulieu* and *Ceballos*, however, in the present case the conviction of the charges of sexual assault in the second degree and risk of injury to a child did not turn on a "credibility contest." Rather, the defendant admitted having sexual intercourse with the victim, and this was corroborated by the victim and DNA evidence. Thus, even if the jury rejected the victim's testimony that she did not consent to sexual intercourse and fully credited the defendant's testimony that the sexual intercourse was consensual and that the victim had told him she was eighteen years old, this would have no bearing

[9] The Appellate Court identified one instance where the prosecutor stated that the defendant was guilty. *State* v. *Spencer*, supra, 81 Conn. App. 327.

[10] The Appellate Court identified the prosecutor's statement that the jurors "can walk out of the courtroom with [their] heads held high [because] justice will have been done" to be an improper appeal to the jury to side with the state. *State* v. *Spencer*, supra, 81 Conn. App. 329. Additionally, the Appellate Court took issue with the prosecutor referring to the jury and himself as "us," such as "the defendant is trying to mislead us . . . ." (Internal quotation marks omitted.) Id., 329 and n.6. Yet, even the examples the Appellate Court identified of the prosecutor using "us" all related to the prosecutor's opinion of the defendant's credibility. See id.

[11] Three out of the four categories of misconduct identified by the Appellate Court related to witness credibility. In the first category—expression of opinion on the credibility of witnesses—the Appellate Court identified repeated statements by the prosecutor that the defendant was trying to mislead the jury and that he was not telling the truth. *State* v. *Spencer*, supra, 81 Conn. App. 326–27. In addition, the Appellate Court cited the prosecutor's repeated references that the victim's testimony was truthful. Id., 327. Two other categories of misconduct—an appeal to the emotions of the jury and improperly referring to facts outside the record—were grounded in the prosecutor's relating a story from his youth. Id., 330–32. The prosecutor's purpose in relating this story was to explain the victim's behavior before and after the sexual assault in order to bolster her credibility. Id., 331.

on the defendant's criminal liability under § 53-21 or § 53a-71 (a) (1). See *State* v. *Jason B.*, supra, 248 Conn. 543 (violation of §§ 53-21 and 53a-71 [a] [1] even where compulsion was not proved); *State* v. *Blake*, 63 Conn. App. 536, 541–42, 777 A.2d 709 (victim's fraudulent misrepresentation of her age to induce defendant to engage in consensual intercourse is no defense to § 53a-71 [a] [1]), cert. denied, 257 Conn. 911, 782 A.2d 134 (2001); *State* v. *Plude*, supra, 30 Conn. App. 535 (noting that victim's age is operative fact that makes act violation of § 53-21).

Finally, the state contends that the Appellate Court failed to give weight to the apparent concession by defense counsel during his closing argument that the defendant was guilty of sexual assault in the second degree and risk of injury to a child. The state argues that since the defendant appeared to concede guilt on these two charges, the jury could not have been improperly swayed by the state's misconduct during its closing argument. In response, the defendant contends that the statement was not an explicit admission of guilt on those charges. We agree with the state.

The jury reasonably could have inferred that defense counsel's statement during his closing argument regarding the charges of sexual assault in the second degree and the risk of injury to a child was a concession of guilt based on both the statement's substance and defense counsel's cursory treatment of these counts in relation to his lengthier remarks on the other counts. While such a concession is not one of the enumerated *Williams* factors, it is probative in demonstrating that there was no reasonable likelihood that the jury's verdict would have been different absent the misconduct. See *State* v. *Thompson*, supra, 266 Conn. 482 (jury's guilty verdict on lesser included offense was indicative that jury "was not unduly swayed by the instances of prosecutorial misconduct"). We conclude that the overwhelming

strength of the state's case, the lack of centrality of the misconduct to the conviction of sexual assault in the second degree and risk of injury to a child, and defense counsel's apparent concession of guilt on these charges during his closing argument outweigh the other *Williams* factors, and, thus, the Appellate Court improperly determined that the defendant was deprived of his right to a fair trial on these charges.

The defendant claims that the Appellate Court correctly reversed the conviction on all the counts because even if the state's case was strong, the strength of a case is only one of the six *Williams* factors. Specifically, the defendant analogizes the present case to *State* v. *Couture*, 194 Conn. 530, 563–64, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985),[12] wherein we concluded that the prosecutor's persistent attacks on the defendant's character during closing arguments required reversal of his conviction regardless of the state's strong case.

Reliance on *Couture* is inappropriate for two reasons. First, the misconduct in *Couture* involved repeated attacks on the defendant's character during the state's closing argument, which necessarily infected the state's entire case against the defendant. Id., 564; see id., 560–61 (characterizing defendant and codefendant as " 'murderous fiends,' " " 'rats,' " " 'utterly merciless killers,' " and " 'inhumane, unfeeling and reprehensible creatures' "). In contrast, the misconduct in the present case, as discussed previously, predominantly was confined to improper comment on witness credibility. Thus,

---

[12] The defendant also cites *State* v. *Pelletier*, 196 Conn. 32, 490 A.2d 515 (1985), however, we note that as the companion case to *Couture*, it was decided on the same grounds. Additionally, the defendant cites *State* v. *Aponte*, supra, 249 Conn. 735, for support. Reliance on *Aponte* is misplaced because in that case we determined that, on three of the four charges, the state's evidence, independent of the misconduct, was strong enough to render the misconduct harmless. See id., 755.

the misconduct's impact on the jury is easier to isolate in the present case than in *Couture*. Second, in *Couture*, the state adduced strong circumstantial evidence of the defendant's guilt; see id., 532–34; however, in the present case the defendant admitted to having committed the acts that constitute overwhelming evidence of the crimes charged. Thus, there is no "reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." *State* v. *Thompson*, supra, 266 Conn. 460.

II

## SUPERVISORY AUTHORITY

The defendant asserts as an alternative ground for affirmance[13] of the Appellate Court's judgment that this court should invoke its supervisory authority over the administration of justice to require a new trial on all the counts. The defendant argues that the invocation of our supervisory authority is proper because prosecutors from the New Haven state's attorney's office repeatedly have committed prosecutorial misconduct during closing arguments, thus this conduct is being overlooked or condoned by the prosecutors' superiors.[14] We decline to invoke our supervisory authority in the present case.

"[W]e may invoke our inherent supervisory authority in cases in which prosecutorial misconduct is not so egregious as to implicate the defendant's . . . right to

[13] Practice Book § 84-11 (a) provides in relevant part: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . ."

[14] The defendant also claims that it would be unfair not to reverse his conviction on all counts, because the upheld charges could be used to impeach his credibility on retrial, where his credibility again will be a central issue. We decline to decide this issue based on its possible impact in a future trial. Nonetheless, we note that the defendant admitted at trial to having two prior felony convictions.

a fair trial . . . [but] when the prosecutor deliberately engages in conduct that he or she knows, or ought to know, is improper. . . . We have cautioned, however, that [s]uch a sanction generally is appropriate . . . only when the [prosecutor's] conduct is so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal. . . . Accordingly, in cases in which prosecutorial misconduct does not rise to the level of a constitutional violation, we will exercise our supervisory authority to reverse an otherwise lawful conviction only when the drastic remedy of a new trial is clearly necessary to deter the alleged prosecutorial misconduct in the future. . . . Thus, [r]eversal of a conviction under [our] supervisory powers . . . should not be undertaken without balancing all of the interests involved: the extent of prejudice to the defendant; the emotional trauma to the victims or others likely to result from reliving their experiences at a new trial; the practical problems of memory loss and unavailability of witnesses after much time has elapsed; and the availability of other sanctions for such misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 422–23, 844 A.2d 810 (2004).

In the present case, we decline to exercise our supervisory authority. There will be a new trial on the charges of kidnapping in the first degree and sexual assault in the first degree, and accordingly, the victim necessarily will have to relive her experiences at the new trial, which will be susceptible to the problems of memory loss and unavailability of witnesses. As we discussed previously, the defendant was not prejudiced by the prosecutorial misconduct on these charges. See id., 423–24 (declining to invoke supervisory authority due, in part, to "minimal prejudice" to defendant). Further, the state already has been sanctioned for its misconduct because the defendant's conviction of the two most

serious charges has been reversed. Finally, the cases the defendant cites to demonstrate a pattern of lax supervision by the New Haven state's attorney's office were all decided after the trial in the present case and, where appropriate, the misconduct in those cases resulted in reversals. See, e.g., *State* v. *Payne*, 260 Conn. 446, 797 A.2d 1088 (2002); *State* v. *Singh*, 259 Conn. 693, 767 A.2d 1214 (2002); *State* v. *Butler*, 255 Conn. 828, 769 A.2d 697 (2001). Thus, the necessary deterrent to prevent such future misconduct already has been provided.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the trial court's judgment with respect to the defendant's conviction of sexual assault in the second degree and risk of injury to a child and to remand the case to the trial court for a new trial on the charges of kidnapping in the first degree and sexual assault in the first degree.

In this opinion the other justices concurred.